**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen John Williams, II,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JCS Acquisition Incorporated,<br><br>　　　　　Defendant. | No. CV-24-00183-PHX-KML<br><br>**ORDER** |

The court dismissed plaintiff Stephen John Williams II's only federal claim and solicited the parties' positions on whether the remaining claims should be remanded to state court. (Doc. 48.) Both parties requested the court exercise its supplemental jurisdiction over the remaining state law claims. (Docs. 49, 52.) Based on the parties' positions, and having considered the relevant factors, exercising jurisdiction over the state law claims is appropriate. Defendant JCS Acquisition Inc.'s motion to dismiss is granted as to Williams's remaining claims.

**I.    Background**

Williams has provided very few factual allegations explaining the basis for his claims. The operative complaint alleges only that Williams experienced discrimination and harassment by his manager as a waiter at Joe's Crab Shack between July and August 2023 on the basis of his sexual orientation, disability, and homelessness. (Doc. 30-1 at 1, 4.) He highlights an incident on August 15, 2023 where his manager "threw food at him" and told him to "pick it up and eat it if you're hungry." (Doc. 30-1 at 4.)

1  As a result of this alleged treatment, Williams brought claims against JCS for violations of the Arizona Civil Rights Act (ACRA), the Arizona Equal Pay Act (AEPA), the Americans with Disabilities Act (ADA), and for intentional infliction of emotional distress. (Doc. 1-1; Doc. 30 at 3.) Williams filed a series of amended complaints, which JCS moved to dismiss. (Docs. 17, 23, 26–31, 34.)

The court dismissed Williams's ADA claim and solicited statements from the parties regarding their position on remanding the remaining claims. (Doc. 48.) Exercising supplemental jurisdiction is within the court's discretion and is informed by the values of "economy, convenience, fairness, and comity." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008). Because the court has reviewed Williams's multiple complaints and this matter has been pending in federal court for over a year, retaining jurisdiction over Williams's state law claims is appropriate. But because Williams does not allege facts sufficient to support his remaining state law claims, JCS's motion to dismiss is granted. (Doc. 31.)

**II.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This does not require "detailed factual allegations," but does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

The court has an "obligation . . . to construe the pleadings liberally and to afford [Williams] the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "However, a liberal interpretation of a [pro se] . . . complaint may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471

(9th Cir. 1992) (quotation marks and citation omitted).

### III. Discussion

#### a. Arizona Civil Rights Act

Williams alleges JCS engaged in a "pervasive pattern of discrimination, humiliation, and harassment" against him because of his sexual orientation, disability, and homelessness and he experienced retaliation for complaining about this treatment in violation of ACRA. (Doc. 30-1 at 1, 4.)

Williams cites Sections 41-1401, 41-1461, and 41-1464 of ACRA in support of his claims. (Doc. 30 at 3.) Section 41-1401 creates the Arizona Civil Rights Advisory Board and outlines its structure and membership. Section 41-1461 defines certain terms under ACRA. Section 41-1464 prohibits retaliation against employees who protest unlawful employment practices.

In interpreting ACRA's retaliation provision, Arizona courts "look to the federal courts' interpretations of Title VII retaliation claims." *Najar v. State*, 9 P.3d 1084, 1086 (Ariz. Ct. App. 2000). Under Title VII, a plaintiff must establish a prima facie case of retaliation by alleging (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "Asserting one's civil rights" is protected activity under Title VII. *Id.*

Williams alleges "attempts were made to voice concerns about the discriminatory treatment." (Doc. 30-1 at 4.) He does not explain what those attempts to voice his concerns were, when they were made, or to whom.

Equally problematic, Williams does not even explain what discrimination he complained of. He mentions a hiring and scheduling manager who "callously threw food at him" and "remarked 'pick it up and eat it if you're hungry.'" (Doc. 30-1 at 4.) He argues this incident was "emblematic of a pervasive pattern of discrimination, humiliation, and harassment." (Doc. 30-1 at 4.) But this is a bare conclusory statement, and Williams cannot rely on it. *Iqbal*, 556 U.S. at 678 (2009). Williams likewise alleges he is "gay, battles dyslexia, PTSD from military service, and homelessness," but does not connect any

mistreatment with these identities, to the extent they are protected.[1]

Williams alleges that because he reported unidentified "concerns" about discriminatory treatment, he was assigned fewer tables, which resulted in fewer tips. (Doc. 30-1 at 4.) But even assuming his table re-assignments were "adverse employment actions," Williams has not alleged a causal link between that and his reports of discriminatory treatment. "At this stage in the litigation, the causal link is construed broadly," but a plaintiff must allege facts "sufficient to draw a reasonable inference that [his] supervisors were aware of [his] complaints." *Chen v. Maricopa Cnty.*, No. 12-CV-00814-PHX-GMS, 2013 WL 1045484, at *5 (D. Ariz. Mar. 14, 2013). Williams has not met this standard because he has not alleged basic facts like the recipient or content of his complaints.

To the extent Williams seeks to bring a claim under ACRA for disparate treatment, this also fails. ACRA prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's sex or on the basis of disability. A.R.S. § 41–1463(B)(1). Identifying a sufficiently-similar individual who was treated more favorably is a necessary part of plaintiff's burden to identify facts showing a prima facie case of discrimination under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Of course, "an employment discrimination plaintiff need not *plead* a prima facie case of discrimination." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (emphasis added). But here there are no factual allegations establishing similarity between Williams and his co-workers nor other "factual allegations that plausibly suggest entitlement to relief." *Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024).

To the extent Williams seeks to bring a claim under ACRA for a failure to accommodate, this claim is dismissed for the same reasons discussed in this court's previous order (Doc. 48) dismissing Williams's ADA claim. *See Merrill-Smith v. La*

---

[1] Homelessness is not a protected identity under ACRA's employment provisions. A.R.S. §§ 41-1461–1468. Williams alleges he "battles dyslexia" and has "PTSD from military service" (Doc. 30-1 at 1) but does not make clear whether he is relying on dyslexia, PTSD, or an unidentified third option as the relevant disability.

- 4 -

*Frontera Arizona Empact SPC*, No. CV-16-02677-PHX-ROS, 2017 WL 11714134, at *5 (D. Ariz. Mar. 23, 2017) (noting "ADA and ACRA claims should be treated similarly"); *see also Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997) (same).

Finally, if Williams seeks to bring a claim under ACRA for hostile work environment, this, too, fails. To state a hostile work environment claim under ACRA, Williams must allege (1) he was subjected to verbal or physical conduct based on his protected class; (2) this conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *O'Connor v. Soul Surgery LLC*, No. CV-22-00156-PHX-JJT, 2024 WL 4817660, at *2 (D. Ariz. Nov. 18, 2024).

Williams does not allege any facts showing he was subjected to discrimination because of his membership in any protected class. Although he argues he was "subjected to egregious discrimination and harassment" and "passive aggressive tactics," these conclusory statements without additional facts in support are insufficient to support his claims. (Doc. 30 at 4; Doc. 30-1 at 4.) Williams again points to the single instance where his manager allegedly "threw food at him" and instructed him to "pick it up and eat it if you're hungry" in support of what he calls a "pervasive pattern of discrimination," but a single instance that is not sufficiently severe is not "pervasive," *Okonowsky v. Garland*, 109 F.4th 1166, 1179 (9th Cir. 2024), and he does not explain how this conduct was related to his membership in a protected class. (Doc. 30-1 at 4.)

Accordingly, Williams's claims under ACRA are dismissed.

### b. Arizona Equal Pay Act

Williams argues JCS's reduction of shifts and tables—which resulted in fewer tips—constituted a violation of AEPA. (Doc. 44 at 2.) AEPA prohibits an employer from paying employees "at wage rates less than the rates paid to employees of the opposite sex" for work of "the same quantity and quality." A.R.S. § 23-341(A). Employers are, however, permitted to pay employees of opposite genders "a variation of rates of pay" for a number of factors including seniority, length of service, ability, and skill. A.R.S. § 23-341(A).

Here, Williams argues his table assignments were "arbitrarily restricted to accommodate fewer guests," significantly reducing his income in tips. (Doc. 30-1 at 4.) He argues, but does not allege in his complaint, "similarly situated employees . . . did not face these reductions in hours and income." (Doc. 44 at 2.) Williams does not allege how the unidentified employees were "similarly situated" or whether they were of the opposite sex. He also does not allege the work he performed was of the "same quantity and quality."

Accordingly, Williams's claim under AEPA is dismissed.

### c. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress requires a plaintiff to allege (1) defendant's conduct was "extreme" and "outrageous"; (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) defendant's conduct caused severe emotional distress. *Breeser v. Menta Grp., Inc., Nfp*, No. 2:10-CV-01592-PHX, 2011 WL 1465523, at *4 (D. Ariz. Apr. 18, 2011).

It is "extremely rare" to find conduct sufficiently outrageous in the employment context to state a claim for intentional infliction of emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). To determine whether an employer's conduct was outrageous under this standard, an employer must act in a way that "would obviously affect the plaintiff's *particular* susceptibility to emotional distress," such as assigning an employee to work at a high elevation when he has a known fear of heights. *Breeser*, 2011 WL 1465523, at *5.

Williams argues the "degrading treatment" by his supervisor, including "[t]hrowing food at [him] and making derogatory remarks in front of others," combined with a "reduction in shifts and hours" constituted outrageous conduct. (Doc. 44 at 3.) Although Williams alleges he has PTSD, he does not argue this conduct would obviously affect a "particular susceptibility to emotional distress." *Breeser*, 2011 WL 1465523, at *5. Additionally, the conduct Williams cites does not rise to the level of "extreme" and "outrageous." *See, e.g.*, *Pontikis v. Lucid USA Inc.*, No. CV-22-02061-PHX-GMS, 2023

WL 6127693, at *3 (D. Ariz. Sept. 19, 2023) (finding "being publicly reprimanded" and made the subject of "negative comments . . . to other employees" did not rise to the level of extreme and outrageous). Accordingly, Williams's intentional infliction of emotional distress claim is dismissed.

### d. Leave to Amend

In general, "[t]he court should freely give leave" to amend a complaint. Fed. R. Civ. P. 15(a)(2). But leave to amend is not appropriate when "'the amended complaint would be subject to dismissal.'" *Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 935 (9th Cir. 2019) (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)). This case was removed to federal court in January 2024 and since that time Williams has made voluminous and confusing filings.

On April 27, 2024, Williams filed an amended complaint. (Doc. 23.) On May 2, 2024, for unknown reasons Williams filed two separate unsigned amended complaints. (Docs. 26, 27.) The court struck those complaints because they did not comply with Fed. R. Civ. P. 11 and Local R. Civ. P. 7.1(b)(1). (Doc. 28.) Williams then filed two seemingly-identical complaints on May 13, 2024 and one was struck as duplicative. (Docs. 29, 30, 43.) After JCS moved to dismiss his complaint, Williams filed another complaint instead of filing an opposition. (Docs. 31, 34.)

Despite filing multiple complaints, Williams has never alleged facts supporting a claim of discriminatory retaliation under ACRA, that similarly-situated employees of the opposite sex were paid wages higher for the same quantity and quality of work, or that JCS's treatment of him rose to the level of being extreme and outrageous. Williams's repeated failures to state a claim show granting leave to amend would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** the portions of the Motion to Dismiss (Doc. 31) that remained pending are **GRANTED**. The complaint is **DISMISSED WITHOUT LEAVE TO AMEND**. The Clerk of Court shall enter judgment in favor of defendant and close this

case.

**IT IS FURTHER ORDERED** Williams's Motion for Fast Trial (Doc. 46) is **DENIED AS MOOT**.

Dated this 14th day of February, 2025.

Honorable Krissa M. Lanham
United States District Judge